[No. 1973.]

### Wes. McGuire v. The State.

Theft — Fact Case.— See the opinion *in extenso* for evidence *held* insufficient to support a conviction for theft.

Appeal from the District Court of Comanche. Tried below before the Hon. T. B. Wheeler.

The conviction was for the theft of a cow and calf, the property of J. C. Gray, in Comanche county, Texas, and the penalty assessed against the appellant was a term of two years in the penitentiary.

The evidence is sufficiently summarized in the opinion of the court.

*Lindsey, Shropshire & Jenkins,* for the appellant.

*J. H. Burts,* Assistant Attorney-General, for the State.

Hurt, Judge. This is a conviction for the theft of cattle, the property of J. C. Gray. There was no fact established by Gray save the want of his consent to the taking.

It appears from the record that Columbus Thornton and his son, A. L. Thornton, were plowing in a field situated on the public road leading from De Leon to Comanche; that there was a gate to the field in which the Thorntons were plowing; that one Sam Cox and defendant were seen to drive Gray's cow and calf through this gate, and that, when they got them in, they followed behind together, for about fifty or one hundred yards, when defendant turned off and rode up to where Columbus Thornton was, Cox driving them on alone, up to the fence, pulled it down, and put them in John McGuire's pasture, in which pasture John McGuire had a bunch of cattle.

These are the only criminative facts against defendant.

Some time after Cox and defendant drove the cattle through the gate, Columbus Thornton saw Cox, when he, Cox, asked him if he had seen them driving a cow and calf through the field. Thornton stated that he had. Cox then said that he understood that Thornton knew the owner of the cattle. Thornton said he thought that they belonged to Gray. Cox replied that he was right,— that he " put her into John McGuire and got the money for her."

The record also informs us that Cox was tried and convicted for the theft of these cattle, and is now in the penitentiary.

John McGuire, brother of defendant, states that in the early part of February, 1884, he was getting up cattle to ship; that he had furnished Cox with $2,000, which was to be paid in cattle; that he received cattle several times from Cox; that the Gray cattle were in his herd, but that with others the cow and calf got out of the pasture, and that he got defendant to go with Cox to get her up, and that defendant did go with Cox and they brought her and the calf back; that defendant was employed by him to assist in gathering up cattle; that defendant was a farmer and not a stockman; that he paid Cox for the cow and calf.

There is some evidence tending to show that defendant made contradictory statements relating to these cattle. This, however, was before he was charged with the theft.

Placing the facts against defendant in their strongest light, the State's case is one of recent possession; not a case of recent possession unexplained when called upon to explain, but simply recent possession. This, it has been held, and we think properly, is insufficient. But this is stating the case too strongly against defendant. Do the facts show him in recent possession — such possession as would call for explanation? We think not; for, while it is true that he was driving the cattle with Cox, still there is no pretense that he claimed them. So far as the testimony goes, defendant simply assisted Cox in driving them into the gate, and some hundred yards farther on towards the fence, when Cox continued on with the cattle. This may have been merely a neighborly act and nothing more.

But concede that, without explanation, this act should be considered sufficient — which is not admitted — a reasonable explanation was established by the testimony of John McGuire, most powerfully supported by the surrounding facts.

But it may be urged that the evidence is sufficient because he proposed to pay the witness, Stone, to swear that he had nothing to do with the stealing of the Gray cattle. Before the trial (how long we are not informed), this man Stone had been in jail, charged with the theft of a horse; and, while in jail, some person, the record does not state his name, offered to bail him if he would testify for the State in this case. This proposition seems to have been accepted, for he states, "I am now on bond." It seems that defendant had been before tried upon this charge, and that this man was a witness, and that on the first trial "he did not testify to these facts." He also states that defendant is a witness against him on the charge of theft of a horse.

To condense: a man is in jail on the charge of theft of a horse; he is offered bail if he will testify for the State in a case against a

*defendant* who is a witness against him upon the accusation for the horse theft. He accepts, is bailed out and testifies; he has been on the stand before, but said nothing of the offered bribe. Now we would ask, will an honest man give credence to such a witness, thus surrounded? Should a citizen be convicted upon the testimony of such a witness? Will justice or public policy be subserved by a conviction obtained upon evidence from such a source? Should the evidence of such a witness be used to strengthen other facts, not sufficient within themselves, so as to secure a conviction? We think not. We do think that the State must be hard pressed indeed when she condescends to resort to the evidence of such a witness.

We are of the opinion that the evidence in this case is not of such cogent and conclusive nature as is required to sustain a conviction for felony. The judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Opinion delivered November 28, 1885.]